EAST TENNESSEE UNIVERSITY v. MAYOR AND ALDERMEN OF KNOXVILLE.

1. MUNICIPAL CORPORATION. *Power of to appropriate money.* A municipal corporation in this State may, if authorized by its charter, appropriate money for corporation purposes.

2. SAME. *Same. Corporation purpose.* What is a corporation purpose is a question to be determined from the facts and circumstances of each particular case, but where it is clear that the purpose itself is a legitimate one, the corporation may do every thing necessary and proper to carry it into execution.

3. SAME. *Same.* Same. To make an appropriation of money by a corporation lawful, it must be to an object not only beneficial to the interests of its inhabitants, but it must also be directly connected with the local government thereof; and where, by its charter, a city is vested with the power to establish and regulate schools, this provision is not inconsistent with the limitation prescribed by the constitution

E. Tenn. University *v.* Knoxville.

confining appropriations by a corporation to corporation purposes, although the money so appropriated may be in aid of a college which, though situated on land adjoining the corporation and in full view of it, is not embraced within its limits.

Case cited: Nichol *v.* Nashville, 9 Hum., 252.

4. SAME. *Contract consideration.* Mutual promises of money, property, or services in the furtherance of a common object from which common benefits are derived constitute a contract between the parties making such promises capable of enforcement at the instance of the party complying with the same. Therefore, where an ordinance of the city of Knoxville contributed a certain sum for the purchase of a library for a neighboring university, to be paid upon the consolidation therewith of the Agricultural College of the State, and upon the faith of this ordinance the university undertook to bring about the consolidation, and succeeded in doing so upon terms with which it had fully complied: *Held,* upon performance of the condition of the ordinance the university was entitled to the amount of the sum appropriated thereby for the purpose indicated.

## FROM KNOX.

From the Chancery Court at Knoxville.

BAXTER & SONS for complainant.

JAS. R. COCKE for defendant.

### STATEMENT OF CASE.

The complainant, a college incorporated in this State under the laws thereof, has been exercising its franchise for a long time past as an institution of learning with its college buildings on a lot of ground just outside of and adjoining the corporate bounds of the city of Knoxville, and in full view of the city, under an act of Congress of July 2, 1862. A large amount of the public lands were donated to this and other States for the endowment

of educational institutions in which pupils are required by the act to be instructed in agriculture, the mechanic arts, and military tactics, in addition to the other branches of learning usually taught in the schools and colleges of the country. The amount received under this benefaction by the State of Tennessee realized in its investment in State bonds, as authorized by the statute, the large sum of three hundred and seventy-five thousand dollars, and this amount of principal is required by the act to remain forever undiminished, " except that a sum not exceeding ten per centum upon the amount received by any State under the provisions of the act may be expended for the purchase of land for sites or experimental farms whenever authorized by the respective Legislatures of said States, and no portion of said fund, nor the interest thereon, shall be applied directly or indirectly under any pretence whatever to the purchase, erection, preservation, or repairs of any building or buildings," and the interest on said fund shall be inviolably appropriated by each State which may take and claim the benefit of this act to the endowment, support, and maintenance of at least one college when the leading object shall be without excluding other scientific and classical studies and including military tactics, to teach such branches of learning as are related to agriculture and the mechanic arts in such manner as the Legislatures of the State may prescribe in order to provide the liberal and practical education of the individual classes in the several pursuits and professions of life.

At the time, the State determined to accept this

bounty of the general government, and both the complainant and defendant appreciated the importance of securing the location of the college at Knoxville, and its consolidation with the East Tennessee University. Negotiations were entered into for that purpose, and as its location and control was entrusted to the State Legislature by the act of Congress pending the question of its location before that body, the Mayor and Aldermen of the City of Knoxville met in council and adopted the following preamble and ordinance:

WHEREAS, At a very large meeting of the property-holders of Knoxville, held at the court-house on January 4, 1786, a resolution was unanimously adopted urging the Common Council of the city to take suitable action to insure the location of the Agricultural College of the State of Tennessee at Knoxville; and whereas, the act of Congress making an appropriation to the State contemplates liberal action on the part of the citizens in furnishing all facilities for the establishment of said college, so far as land, buildings, and school furniture are concerned, and forbids the use of any part of the agricultural college fund for such purposes; therefore,

*Be it ordained* by the Board of Mayor and Aldermen of the City of Knoxville, that the city of Knoxville hereby appropriates, for the purchase of a library for the East Tennessee University, the sum of $15,000, said sum to be paid to the trustees of said university in three equal instalments, and for the sole purpose herein mentioned. The first payment to be made when the Agricultural College of Tennessee shall have

been permanently located at Knoxville, and the remaining instalments one and two years thereafter. This ordinance was adopted January 4, 1869, and a certified copy thereof furnished to an agent of the university, employed by the university at its own cost, who proceeded to the State capitol to represent to the Legislature the advantages of consolidating the college with the university at Knoxville, and as a persuasive argument to influence their favorable action, exhibited a certified copy of this ordinance. The Legislature passed an act January 16, 1869, donating the entire fund to the East Tennessee University upon the condition, however, that the complainant should erect buildings for the accommodation of two hundred and seventy-five students; furnish the same with appropriate school furniture; provide suitable lands, not less in extent than two hundred acres, so that the whole property shall be worth, at a fair estimation, not less than one hundred and twenty-five thousand dollars: Act of 1869, ch. 12, sec. 4.

The location being thus effected, and the conditions imposed fulfilled by the university, and the institution being in full and successful operation, the university demanded of the city the amount of the appropriation authorized by the ordinance, and the payment thereof was refused. Thereupon the university filed this bill to enforce its payment, and upon hearing in the Chancery Court at Knoxville, a decree was rendered in favor of the city, and complainant's bill dismissed, from which an appeal was taken to this court.

E. Tenn. University *v.* Knoxville.

NICHOLSON, C. J., delivered the opinion of the court.

Judges FREEMAN and McFARLAND dissenting.

The controlling question in this case is, whether or not the corporation of Knoxville has the constitutional power to levy taxes and appropriate money to aid in procuring a large sum of money as an endorsement in enlarging the operations and giving permanent prosperity to the East Tennessee University, located on the margin of the city. If the accomplishment of such an object is a corporation purpose of the coporation of Knoxville, as contemplated by the constitution, which authorizes the Legislature to grant the power of taxation to incorporated towns for corporation purposes, then the appropriation can be legally made, otherwise not.

It is the settled law that the powers of corporation of all kinds are to be strictly construed; but this strict construction has never confined the construction of the power to its word and letter, but every thing necessary and proper for carrying into execution the granted power, has always been conceded by the strictest constructionists.

A municipal corporation is a body corporate and politic, established by law, to share in the civil government of the country, but chiefly to regulate and administer the local or internal affairs of the city, town, or district incorporated: Dillon, sec. 9; or, as defined in Viner's Abr., "an investing the people of a place with the local government thereof."

The charter of incorporation is the constitution of

this local government, granted by the Legislature, with powers which must be consistent with the condition of the State.

The city of Knoxville is incorporated, with the powers necessary for the local government of the people within its limits, and among these is the specific power to establish and regulate schools. It is conceded that the establishment of schools is properly classed among the legitimate purposes of a municipal corporation, and it is the well established principle, that in the execution of this power, the governing body in the city can lawfully do any and every thing necessary and proper in the execution of this granted power.

This brings us to the exact question to be determined. Is the appropriation of money by the Mayor and Aldermen of Knoxville to the trustees of East Tennessee University, to enable them to secure a rich endowment of the university, such a necessary or proper exercise of the power to establish and regulate schools for the benefit of the inhabitants of Knoxville, as is contemplated by the constitution?

It is admitted, without hesitation, that an appropriation of money by a corporation, to be lawful, must be to an object or for a purpose that is not only beneficial to the interests of the inhabitants of the city, but it must also be to an object and for a purpose which belongs to, or is directly connected with the local government thereof. Hence, it is readily conceded, that the numerous cases to be found in the books, holding that appropriations of money by mu-

nicipal corporations to private enterprises, having no connection with the local government of the city or town, but incidentally beneficial to its inhabitants, are correctly decided to be unconstitutional. And upon the same principle, the decision in the case of *Nichol* v. *Mayor and Aldermen of Nashville,* 9 Hum., 252, holding that the building of a railroad from Nashville to Chattanooga was a corporation purpose; not because it was a matter of necessity, but of great convenience and advantage to the various interests of the city, while it rests upon the very verge of the law, still was correctly decided, because it was a necessary and proper mode of carrying out a corporation purpose. If the city could not build the road herself, it was legitimate for her to unite with another corporation to effect the object.

The principle that governs in determining whether an appropriation is for a corporation purpose or not, may be clearly illustrated by reference to what corporations may do in the preservation of health of its inhabitants. The preservation of health is universally conceded to be a legitimate corporation purpose. To carry out the power to preserve the health of a city, money may be appropriated to secure a constant supply of wholesome water; hence, water-works outside of the city, from which good water may be conveyed into the city, may be erected and operated either in whole by the city or in connection with others. In like manner, it is now well understood, that public parks in the vicinity of cities, contribute essentially to the health and comfort of its inhabitants, and hence

money may be legitimately appropriated for these pur-
poses.   So, likewise, as to the erection of hospitals
and pesthouses outside of a city.

The preservation of peace and order within the
limits of a city, is a clear corporation purpose.   To
effect this object as well as for the comfort and con-
venience of the inhabitants in the night-time, the light-
ing of the streets is a proper object or corporation
purpose; and if this can be done more cheaply or
more efficiently by gas than by lights from oil in
lamp-posts, it is within the legitimate province of the
corporation to obtain gas from works located out of
the city, either erected by the city corporation or by
a gas company.

In all these cases the appropriations are justified
upon the principle that the object to be accomplished
is a legitimate corporation purpose, and the means
adopted for their accomplishment are the necessary and
proper means for carrying them out.

The question before us must be determined upon
the application of the same principle.   The establish-
ment and regulation of schools of every grade, con-
stitute legitimate corporation purposes.   It is an axiom
that knowledge, learning, and virtue are essential to
the preservation of republican institutions.   The estab-
lishment and regulation of schools are, therefore, cor-
poration purposes of the local government of a town
or city of the highest order.   If schools can be es-
tablished and regulated within the corporate limits of
the city or town, then they should be there located.
But if it is impracticable to find locations within the

E. Tenn. University *v.* Knoxville.

city or town, or if locations can be had more cheaply and equally accessible and convenient for the accommodation of the inhabitants of the town or city, the fact that the school-houses are outside of the corporation cannot effect the question of power. The education of the children of the town or city is the purpose for which the local government may lawfully appropriate money. If the money appropriated secures the purpose, it can make no difference whether the houses where the schools are taught are located on one side or the other of an imaginary line. Nor can the principle be affected by the fact that the money is appropriated to a school already located and in operation outside of but adjoining the corporation boundaries. If in the judgment of the local government the appropriation is necessary and proper to prevent the discontinuance of the school, or to give wider extent to its usefulness, and to secure to it permanency, the purpose is as much a corporation purpose as if the money was appropriated in founding a new school either in the city or outside of it. The controlling question is, was the appropriation made to secure to the inhabitants of the city the benefits and advantages of education?

Nor is the principle affected by the fact that pupils from every other county or State or country, have the same privilege of going to the school with the pupils whose parents are members of the corporation of Knoxville. The appropriation is made not to secure to the inhabitants of Knoxville either superior rights or privileges over the inhabitants of other portions of the

country, but to secure the advantages resulting from their proximity to the school. The object is to secure the permanent location of the school at a point so near to Knoxville that the facilities for and benefits of a thorough education can be enjoyed by the children of its inhabitants without the expense and inconvenience to which those are subjected who are sit uated at a distance from the school. It does not secure superior rights in the school, but superior advantages in enjoying common rights.

The incidental benefits to the inhabitants of Knoxville in the way of extending and increasing their trade by the expenditure of large amounts of money among them, in consequence of the location of the school in their vicinity, are not sufficient of themselves to establish the power of the corporation to make the appropriation; but when it is seen that the appropriation is for a legitimate corporation purpose, then the incidental advantages may be looked to on the question whether the local government have exercised their power of appropriation wisely or not.

We conclude that the corporation of Knoxville had the power under the constitution, and under their charter, to make the appropriation, and as the university accepted the offer and acted upon it, and secured the endowment contemplated, and thus secured to the inhabitants of Knoxville the permanent location of a school at which the advantages of a thorough education can be enjoyed by their children in all time without the expense of being sent abroad to be educated. We are of opinion that the corporation is bound by its act of appropriation.

Dissenting opinion by FREEMAN, J.

By resolution of the Board of Mayor and Alder-
men of the City of Knoxville, the sum of $15,000
was appropriated to the East Tennessee University, to
be expended in the purchase of a library for said in-
stitution.   A copy of this resolution was furnished the
agent of the university, to be used to influence, as
far as it might, the Legislature to establish the Ag-
ricultural College in connection with said university,
provided for by the act of Congress donating proceeds
of certain lands to the States for said purpose.   This
fund was so appropriated, and the agricultural college
is annexed to the university by an act of the Legis-
lature.   This bill is filed to compel the payment of
the sum by resolution agreed to be appropriated as
above.

The question is, had the corporation of Knoxville
power thus to expend the public funds raised, or to
be raised, by taxation from the property of her citi-
zens.   It is obvious that this presents the question
of the extent of the power to tax on the part of the
authorities of the corporation; for whether the money
be assumed to be in the treasury or to be raised, it
is equally the public revenue of the city, and it could
not be that the corporation authorities could expend
these revenues for purposes for which they had no
power to impose a tax to raise them.

The question then recurs, for what purpose may
the Legislature authorize municipal corporations to im-
pose taxes, and what are the limitations, if any, on

12—VOL. 6.

this power to be found in the Constitution of the State?

By the Constitution of 1834, it is provided that "the General Assembly shall have power to authorize the several counties and incorporated towns in this State to impose taxes for county and corporation purposes respectively, in such manner as shall be prescribed by law." The same provision is found in the Constitution of 1870, with certain restrictive regulations on the power of counties and incorporated towns as to loaning their credit, found necessary for their restraint by experience, in this direction.

The simple and only vital question then, as we deem it, in this case, is, whether the establishment or purchase of a library for the East Tennessee University is a corporation purpose or a purpose or enterprise of the city of Knoxville, in any legal sense of these terms, or is it a purpose of another corporation, having different objects and purposes, in the success of which the corporation, or rather the citizens, of Knoxville may be incidentally benefitted it is true, as they are by a thousand other enterprises, but with which, as a corporation or city, it has no more connection than the fact that the institution proposed to be aided is in close proximity to the city, and being so, its students will naturally purchase their clothing, and be compelled to be fed on the supplies either furnished by the county or city. It must be borne in mind, in connection with the agreement on this question, that the fact that the donation may or not assume the form or essence of a contract, can have no pos-

sible influence in determining the question to be investigated, to-wit, the power of the corporation thus to appropriate the money. The fact that a contract is made, can in no degree furnish the slightest aid in reaching the conclusion that the power to make it exists under the Constitution. If such a proposition should be assumed, it would be answered by the simple reply, that if this be so, then all contracts made by corporations by which revenue was to be raised or expended would necessarily be binding, as soon as a contract was established, and thus the limitation upon this power in the Constitution be at once swept away, or left at the will of the corporate body.

The rule of law is settled on this question of the effect of a contract beyond all dispute, no authority to the contrary so far as we are aware. It is thus laid down by Judge Cooley in his work on Constitutional Limitations, p. 196. "It follows," he says; "that if, in any case, a party assumes to deal with a corporation on the supposition that it possesses powers which it does not possess, or to contract in any other manner than is permitted by the charter, he will not be permitted, notwithstanding he may have complied with his undertaking on his part, to maintain an action based upon its unauthorized action. Any party contracting with it must take notice of any want of authority which the public records would show." We need not stop to argue that all parties, especially the Legislature of the State, would be bound by knowledge of a constitutional limitation on the powers of such bodies.

That the clause of the Constitution contains a grant of power, with a limitation on that grant, is clear from the language used; and that the grant is of power to the Legislature to authorize counties and incorporated towns to impose taxes, and the limitation is added—which might have been fairly implied—that they shall be so authorized to impose taxes for county and corporation purposes. This provision necessarily excludes the power to do so for any other purposes. It will be observed that the same power is given to impose taxes for county purposes as is given for corporation purposes. We may derive some aid in arriving at a proper conclusion by looking at the question with reference to the power of a county to impose a tax to aid in the works of a sister and adjoining county. In numerous counties in the State there have been organized, under legislative authority, agricultural and mechanical associations for the promotion of the agricultural and mechanical interests of their people. Suppose it was proposed by the County Court of Knox to levy a tax of one cent, or any amount, on the taxable property of the citizens of Knox, to aid in putting into operation such an association in the county of Blount, would any man maintain that this was a lawful tax? Why not? Not because it was to be executed near to or distant from the county of Knox, but because it would not be a county purpose of the latter county. But to give an illustration more appropriate: The counties of the State that choose to do so, are authorized to levy a tax for the purpose of establishing a system of com-

mon schools in the respective counties.   Suppose the county of Blount should have a school of very high order near the line between that county and Knox county.   Suppose it should be so located that the citizens of Knox might with propriety, and under the regulations of the county of Blount, upon payment of tuition fees, send their children to this school from generation to generation, and thus the people of Knox in that section be incidentally benefitted by the educational advantages thus furnished them.   Suppose, in addition to this, that a large boarding establishment should be connected with the school, and it should be situated on the railway leading from Knoxville to Maryville, the county seat of Blount, within ten or twenty minutes travel of the city of Knoxville, thus insuring the trade of the students to this city, the purchase of their clothing and many other supplies, such as sugar, coffee, tea and other like articles necessary to their maintenance, thus, adding to the trade of the city and its consequent prosperity.   Suppose, in addition to this, there should be in the neighborhood, and convenient to this school in the county, a large number of small farmers, who had market gardens and dairies, who then would be furnished a ready market for their productions from these sources, in addition to many other articles of farm produce that would be consumed by these students.   Now, we ask, would any man maintain that a tax might lawfully, under the Constitution of the State, be laid on the people of Knox to aid in supporting this school, either as a school, or to make it more attractive in

a small or large degree, by the addition of a library to cost either one thousand or fifteen thousand dollars. We hardly think any lawyer would undertake to maintain such a proposition. But why? Here are all the elements of advantage to the county of Knox, that are to be found in East Tennessee University to the city of Knoxville. There is the element of proximity of the institution of one county to the citizens of the other. There is the element of advantages of trade to be enjoyed not only by the citizens of the county, but also in a large degree by her flourishing and enterprising county seat, in the prosperity and growth of which the whole county is deeply concerned, as thereby furnishing a larger demand for the products of industry made by the labor of her citizens. In addition, there would be educational advantages furnished to the citizens living contiguous, and which might be enjoyed precisely on the same terms that the children of a corporator of the city of Knoxville may enjoy these advantages at the University of East Tennessee—by paying the tuition fees. But the answer to all this would be, it is not a county purpose of the county of Knox, but one of the county of Blount. It is therefore forbidden by the Constitution of the State, and no such tax could be imposed.

In support of this tax, however, it might with equal plausibility be argued, as it has been done in this case, that what the county of Knox might do for itself—that is, establish a system of public schools for the education of the children of her people—she could equally as well aid another county to do, where

her children were to be benefitted by it.    The answer
would still be, that this is an evasion of the Consti-
tution, and while it looked plausible, still it did not
meet the question; that the purpose was still not a
county purpose of the county of Knox, and no amount
of incidental advantage could make it such.

Now let us apply this argument and illustration to
the case in hand.    Here is a university already lo-
cated near the city of Knoxville, where it has been
for many years.    It is a distinct corporate body, or-
ganized under an act of the Legislature, with powers
adapted to carrying out the ends for which it was
created, that is, to give a thorough education to the
students who may attend it, not from Knoxville alone,
but from any county in the State, or even from any
State in the Union.    This is its purpose, for this it
was organized, and for this its whole machinery is
adapted and put into operation.    How can it be
maintained upon any sound principles that these pur-
poses are the purposes of the corporation of Knox-
ville?    Is it a purpose of the corporation of Knox-
ville, or any other city of our State, to furnish edu-
cational facilities in the higher branches of learning,
classical and mathematical, to the people of the whole
land?.    Or is a purpose of said corporation to fur-
nish agricultural knowledge, such as may be taught
in the agricultural department connected now with the
university, to all the children of the State, whether
for a small or large consideration in the way of tui-
tion fees?    We confess we have been unable to see
that this can be the case, after most careful thought.

on the question. It cannot be, in our view of the question, unless the purposes of the corporation known as the University of East Tennessee, are identical with those of the other corporation, known as the city of Knoxville. That this is not the case, is seen by the fact that the purposes of the one are to give educational advantages to all who may choose to patronize it as a seat of learning, not only in the State, but in the United States, and, we take it, a citizen of Canada or Europe might, on the same terms as others, enjoy equal advantages in the learning dispensed by the University to those that might be had by a child of a citizen of the city.

We think this presents the clear line of distinction laid down by the Constitution, that is, that revenues to be raised, either by counties or corporations, must be for county and corporation purposes, and not to aid or advance other ends; and that no amount of incidental advantages can give a right to exercise this power of taxation where the purpose is not a corporation purpose.

To show where the view sought to be maintained would lead, let us see to what it would reach. The whole argument on this branch of the question turns on the question of proximity to the corporation of the town or city, and incidental advantages thereby derived. On the first question it will be seen at once that the matter of proximity cannot be taken as an element to determine the question of power, for where will you draw the line? Shall it be a corporation purpose when in a half-mile, or in full view of the city, or

shall it be two miles or ten distant? Who can say at what point it shall be, and beyond what line it shall cease to be a corporation purpose. As to incidental advantages to the trade of the city the precise same difficulty presents itself. Who shall be able to say how much advantage must be derived in this way, in order to make a corporation purpose, and at what point these advantages shall be held too small to be entitled such a purpose? Shall it be one thousand dollars, or ten, or less or more? The very impossibility we here point out shows, we think, beyond all question, that these were not intended by the Constitution as the tests of the right to exercise the power in question. We may add in this view of the question, that on the principle laid down, any town in East Tennessee might well tax their people to establish manufactories of iron in all its forms, and in fact in all the multiform of manufacturing industry that will serve to make this section of our State the great manufacturing center of the South, if not of the United States, as her resources and facilities indicate she may in the future be. Yet who will maintain that such enterprises are municipal corporate purposes?

In a word, on the principle contended for, and which will support the decree sought, there can be no limitation whatever upon corporate action by the towns and cities of our State, as these corporations have only to decide that the corporation will be incidentally advantaged, and this gives the right to give its money, or the money of the citizen rather, in aid of whatever enterprise may be proposed. It may be said that the

people who elect will give the proper restraint upon the action of the body. But this does not meet the question, for the Constitution has prescribed the limit, or rather the people by the Constitution have prescribed the limit of power, and they are not called on to do more. Its enforcement is left to the courts, a duty we cannot avoid, or shift off on the shoulders of the citizens.

It is sought, however, to derive the authority from the case of *Nichol* v. *Mayor and Aldermen of Nashville*, 9 Hum.

Whatever the general language of the brilliant judge who delivered that opinion may, when pushed to the fullest extent, in some general propositions laid down, have been, still on well settled principles the case only presented the question as to whether the city could subscribe money to aid in building a railroad, and that this was a corporate purpose, and this question was decided in the affirmative. We do not seek to disturb this conclusion, but the case is authority for no more than this. We cannot see a good reason for extending it to the extent now claimed, nor do we feel justified in so doing. The principle of that case however will not reach this, for it was held that roads were a necessity to a town or city, and an essential to their trade and growth, therefore the decision then made. But it cannot be fairly held, we think, that it is essential, or even in any sense necessary, to the existence of the city of Knoxville, that the university shall have a library, nor even an agricultural college in connection with it, however munificent its endow-

E Tenn. University *v.* Knoxville.

ment. But the argument is made, that the State of Tennessee, by the Constitution, is bound to foster and encourage education, or to use the language of the Constitution, "cherish literature and science." It is then insisted that the State can levy taxes for this purpose, and that it follows that it may delegate such power to municipal corporations. We cannot assent to the conclusiveness of this argument.

While education and the cherishing of literature and science may be legitimate objects of State care, and legitimate purposes of State taxation, it does not follow that the State may authorize municipal corporations to impose taxes on the people for all purposes for which the State might impose a tax, because the Constitution has, in express terms, limited the action of counties and incorporated towns to corporation purposes, and has not empowered the Legislature to authorize these corporations to tax for State purposes or objects. It does not follow that because a tax may be one authorized for State purposes, that such a tax is necessarily a corporation purpose. The objects of State taxation are defined either expressly or by implication from other powers given, and duties imposed on the State government in the Constitution, and taxation is legitimate by the State upon all her citizens for all these purposes. But when a municipal corporation proposes to tax the people, it can only do it for a corporation and not a State purpose, and the State has no power to delegate authority to tax for any but corporation purposes. There are many purposes for which the State may levy taxes, and to

which it may appropriate its revenues, that a municipal corporation could not.    For instance, the State of Tennessee issued its bonds and became a stockholder in the Bank of Tennessee, and we believe at one time held stock in the Union and Planters Banks. But could it be maintained that a municipal corporation could be authorized by the Legislature to establish a bank, and levy a tax upon the people to furnish its capital, or take stock in one?    We think no one would go so far as to hold this.    Why?    Because a bank would not be a legitimate corporation purpose, although it might be a State purpose, and one that the Legislature might well establish for the convenience of the people of the State.    Or could the Legislature authorize a county to impose a tax on its people to furnish the capital for a bank?    We suppose no one ever so held, yet on the argument we are combating, the State having the power to do so, could well authorize any county to do so by delegating its own power.    We need not further illustrate the objections to this view.    We can but think an argument that leads to such consequences must be radically erroneous and unsound.

The true principle of our Constitution is, as we think, the very opposite of the one stated, that is, that for State purposes the State may impose its taxes, and collect its revenues, but this power belongs to the State alone, and cannot be delegated.    That for corporation and county purposes the State may authorize corporations and counties to impose taxes, but for these purposes alone.    This must be so, as we think,

unless we utterly disregard the plain limitations of power on this subject given in the organic law.

It is earnestly argued, however, that the corporation of Knoxville may establish schools for its inhabitants, and therefore it may aid in supporting schools established by others.

This does not follow, as we think, by any means in the sense intended by the argument. While the corporation of Knoxville might well establish schools for its own people, it does not follow, as we have before argued, that it is equally a corporation purpose to establish schools for other people, or that the inhabitants of the the city may be taxed to support or aid a school for all the balance of the State, or even the whole county so far as the people of the entire Union may choose to patronize it, as in the case of the university. The city of Knoxville has a system of free schools, but we apprehend it would be difficult to maintain that the people of the county outside of the corporation could have the benefit of them, or be taxed to support them. They are a corporation purpose, but they are under corporation control and management we take it, and the citizens of the corporation have the right to send their children to them, not the bare privilege on payment of fees, as this may send them to Yale or Harvard, or University of Virginia. This is all they have as to the University of East Tennessee; only a privilege to do so, but no right more than all others.

We now recur to a few adjudications on this question.

The case cited from 4 Tenn. Rep., 400, is so clearly in support of our view that we cannot see well how it can be misapprehended. The doctrine of that case is not that whatever the State may do, it can authorize its municipalities to do. It is true the judge incidentally says, page 415: "It scarcely seems necessary to say that what a State as a political community cannot do, it cannot require inferior municipalities to do. When the case is found to stand entirely outside the domain of taxation, State burdens and township burdens are alike precluded." He adds, however, "no vote nor majority, however large, can affect the principle; any single individual has a right to insist that the public do not own or control his property for the purpose of donations."

The first principle laid down is axiomatic, that the State could confer no power on municipal corporations to tax where it possessed none. But its converse, that whatever power on this question of taxation that the State as a State had the right to exercise, it might confer on its municipalities, is one not found in the opinion nor deducible from it, not even hinted at, as we understand it. But the latter principle so clearly enunciated, that "any citizen has a right to insist that the public do not contsol his property for the purpose of donations," is one based on a fundamental principle underlying the right to tax at all, and one which can never be overturned.

This principle is fatal to the present case, for, as we maintain, it is one of pure donation, in consideration, it is true, of incidental advantages hoped to be

received, but none contracted for or guaranteed · to the body, to-wit: the corporation of Knoxville, making the donation. The whole thing of the opinion cited is, that the purpose was not a public or corporation purpose, and that therefore the State could not authorize taxation for such purpose; The fundamental principle on which it rests, as stated by the learned judge, p. 405, is, that as to a burden imposed by the Legislature under the power of taxation, "It must be imposed for a public and not a mere private purpose. Taxation is a mode of raising revenue for public purposes only, and, as said in some of the cases, when it is prostituted to objects in no way connected with the public interest or welfare it ceases to be taxation, and becomes plunder." He then goes on to meet the argument, drawn from incidental benefit to the town, by showing that a public work by which a town is thus benefited is no more such a "public purpose" than opening of a hotel, the establishment of a line of stages, or the putting in operation of a grist mill, each of which works, he says, may, under proper circumstances, be regarded as a local necessity, in which the local public may take an interest beyond what they would feel in other objects for which the right to impose taxation would be unquestionable. He then cites, with approval, the decision of *Weeks* v. *Milwaukee*, 10 Wis., 242, where, he says, the court justly treated the claim of a right to favor, under the power of taxation, the construction of a public hotel, though the aid was to be rendered expressly "in view of the great public benefit which the construction of

the hotel would be to the city," as entitled to very little consideration. The court expressly held that the public could not be compelled to aid such an enterprise from any regard to the incidental benefit which the public were to receive therefrom.

This principle, we think, is certainly sound, and is much stronger in its application in our State, where it is embodied in the organic law, limiting the right of the Legislature to impose taxes expressly to corporation or public purposes of the body. If the opposite theory had been that of the Constitution, it would have been expressed in language like this: "may impose taxes for all purposes incidentally beneficial to the people of the corporation," which would be a clear grant of power to do what is now contended for, but which is not the language of our Constitution, nor is the language used identical with it.

The result of the reasoning of Judge Cooley, in the above case, is thus stated, p. 414: We perceive, therefore, that the term "public purpose," as employed to denote the objects for which taxes may be levied, has no relation to the urgency of the public need, or to the extent of the public benefit which is to follow. It is, on the other hand, merely a term of classification to distinguish the objects for which, according to settled usage, the government is to provide, from those which, by the like usage, are left to private inclination, interest, or liberality. This creates a broad and manifest distinction—one in regard to which their need be no doubt or difficulty—between public works and private enterprises; between. the public convenience,

which it is the business of government to provide, and those which private interest and competition will supply whenever the demand is sufficient. It is upon this reasoning and these views alone, that he concludes his opinion with the remark that the authority authorized to be exercised in that case was not within the taxing power of the State, for the principle, as he expressly states, p. 421, that " it appears that the first and most fundamental maxim of taxation is violated by the actual question." This fundamental maxim is the one we have quoted, that the " tax must be imposed for a public and not merely for a private purpose."

So much for this authority, the principle of which we unhesitatingly adopt in its application to the case now before us, and which, in all its reasoning, sustains and maintains the views we have herein expressed. This case presents less of a public purpose than the case of the bonds of the town of Gallatin, decided by this court. In that case the town had subscribed for $4,500 of the stock in the Lumber, Spinning, and Manufacturing Company, and thus obtained an interest in the business. The bonds were held void for want of authority in the corporation to issue them. It is true the question of whether the bonds were issued for a "corporation purpose" was not decided, as the case went off on another ground. Yet, on this question Judge McKinney will say in the opinion, that "it may be remarked, however, that if it were held to be such a purpose, it would, perhaps, be difficult to imagine any speculation that might not be so regarded."

13—VOL. 6.

And so we may say of the principle contended for in support of the liability of the corporation in this case. Under it, any speculation whatever, a cotton factory, a hotel, an iron manufactory, in fact, any kind of business employing a number of employees, or using capital in the city or its vicinity, might equally well be made the objects of the bounty of the corporation, and the people of the city be taxed to furnish the money for this purpose.

We cannot assent to doctrines leading to such consequences, and which, under plausible generalities, as we think, sweep away the limitations of the Constitution on this important and vital subject.

It is proper to remark that the idea of a contract, and the element of apparent bad faith in refusing to carry out a promise on the part of the corporation, can have no possible influence in deciding the question of the exercise of a power under the Constitution. The Board of Aldermen are but the agents of the people of the city, and if they proposed, or even made a contract beyond their authority, it is simply void for want of power to make it. The fact that the Legislature may have been somewhat influenced by this promise of the corporation is equally outside of the question at issue. They acted with a knowledge of the fact that it was but the promise to pay of a corporation, and they were charged with knowledge of the clause of the Constitution that forbade municipal corporations from imposing taxes for any but corporation purposes.

We cannot, however, assume that the Legislature

was influenced in their action to any very great degree in locating the agricultural college in connection with the university by this promise. It was a fund in which the whole State was interested, and must assume that the general public good prompted the action of that body.

It will be observed that not a single case, or opinion of any text writer, directly sustaining the view maintained for the complainant, is cited, nor are we aware of but one case that seems to do so. The only case in our own State is the one already referred to of *Nichol* v. *Mayor and Aldermen of Nashville*, which, as we have said, only decided that a railroad was a corporation purpose. We think, to extend that case to the point of sustaining this, comes precisely within the principle so emphatically announced by Judge Green in the opinion of the court in *Dabney* v. *Campbell et als.*, 9 Hum., 683. He says: "There is nothing more dangerous in the administration of the law than a blind submission to authorities merely because they have some analogy to the case for decision. The original case may be decided on principle, and be sustained upon the soundest reasoning, but the facts of the next case differing, the analogy is imperfect. Nevertheless, it is thought to be sufficient to justify the proposed decision; but the third case, though having some analogy to the second, does not fall at all within the reasoning of the first. Such, it seems, is the mischievous tendency of the argument that is now pressed on us."

We now refer to two cases which, we think, in

unmistakeable terms, and on sound reasons, sustain the view we have laid down, in addition to the one from 4 Am. R., already cited. The first is the case of *Clarke* v. *City of Des Moines*, 6 vol. A. M. L. Register, p. 158, decided by the Supreme Court of Iowa, an able opinion by Judge Dillon. In that case it was held that warrants issued to one Turner, to aid him in constructing a tall bridge across Raccoon river, by which intercourse would have been facilitated between the citizens of the city passing from one side to the other. But the court say, it was essentially a private enterprise, and while the city would be incidentally benefitted, so it would be by the erection of a grain elevator, of a private market-house, but that this would not justify the city furnishing public funds in aid of such enterprise. The other case is *Curtis* v. *Whipple*, by the Supreme Court of Wisconsin, cited by Judge Dillon, in a note to a case, 9th vol. Am. L. Reg., 173. In this case it was held that taxes could not be imposed to aid "the Jefferson Liberal Institute," an educational institution controlled by a board of trustees. The taxpayers of the town of Jefferson, where people were to be taxed to support it, were not stockholders, and had no voice in its management, nor did they have any special rights or privileges in the institution, were some of the reasons given for the decision, and the incidental benefits were held not to furnish any grounds for exercise of the right of taxation.

To these cases we might add others, but we think the principles herein maintained are abundantly sus-

tained, both by the authorities we have cited, as well as sound principle, and a true public policy.

We therefore conclude, without further extending this discussion, that the proposed subscription is, in fact, a donation, although it may assume some of the aspects of a contract; but that, even admitting it to be a contract, it is one for payment of money which must be raised by taxation, and that the purpose is not a public or corporation purpose in the sense of the constitution, but only aid given or proposed to be given, by one corporation to another, to carry out the purposes of that other, which are diverse from, and no wise a part of, the purposes of the corporation of the city, and, therefore, the promise of the corporation is void, being contrary to and in violation of the Constitution of the State.

We adopt the language of Judge Dillon, in his work on Municipal Corporations, p. 22, in support of our conclusions: "That municipal corporations are institutions designed for the local government of towns and cities; or, more accurately, towns and cities with their inhabitants, and are, for purposes of subordinate local administration, invested with corporate powers. To invest them with the powers of individuals, or of private corporations, for objects not pertaining to municipal rule, is to pervert the institution from its legitimate ends, and to require of it duties it is not able satisfactorily to execute. The result of such a view has too often been that debts are incurred so large that they press with disastrous weight on the municipality and its citizens. In view of these considera-

tions we do not think that sound policy demands an extension of powers as to these bodies in this direction, and certainly in no case where the powers sought to be exercised violate the letter and spirit of the Constitution.

The bill should be dismissed.

I concur very fully in the foregoing opinion of Judge Freeman.